562 So.2d 359 (1990)
Gale Glass BAGGETT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-03540.
District Court of Appeal of Florida, Second District.
May 11, 1990.
*360 James Marion Moorman, Public Defender, Bartow, and Andrea Steffen, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Elaine L. Thompson, Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
In this appeal, Gale Baggett challenges an order which denied her motion to suppress the seizure of cannabis and hypodermic syringes and to suppress statements she made to the arresting officers following the seizure. We reverse the judgment and sentences entered against Gale Baggett pursuant to her pleas of no contest to drug charges after she reserved the right to appeal the court's ruling on the motion to suppress.
Gail Baggett was charged with possession of cannabis and possession with the intent to use drug paraphernalia. Her husband was charged with the same offenses and an additional charge of possession of cannabis with intent to sell. These charges arose when officer Dowdy stopped Mrs. Baggett and her husband while they were walking along a state road at approximately 4:40 p.m. on March 25, 1988. Dowdy stopped the Baggetts to conduct a field interview based upon directives he had received at his shift briefing that the Baggetts were suspected of having committed recent burglaries in the area. After stopping the Baggetts, Dowdy learned that the husband had some outstanding warrants against him and arrested him. Dowdy proceeded to collect information for the field interview card from Mrs. Baggett.
Meanwhile, a second officer on the scene, Metcalf, had observed a dumpster containing debris such as brush, tree limbs and cut grass near to where the couple were standing. As the couple began exchanging personal property in preparation for the husband's arrest, Metcalf heard a noise that sounded like something dropped into the dumpster. Metcalf could not observe the hands of the couple during this period. He looked again in the dumpster and saw two hypodermic syringes on top of the pile of debris. Metcalf told Dowdy what he had found, Dowdy then decided to pat down Mrs. Baggett. Dowdy took her purse, which he testified was open. Dowdy observed a large bag inside the purse containing plant material, which was later determined to be cannabis. He removed the bag and found five additional baggies of cannabis, one hypodermic needle, and a bottle containing two pills.
Mrs. Baggett was arrested and taken to the Lake Wales police station. After Miranda, Mrs. Baggett denied the syringes in the dumpster were hers, but stated the needle found in the purse belonged to her. Mrs. Baggett stated her husband had *361 placed the marijuana and pills inside her purse.
There were no outstanding warrants for Mrs. Baggett. During the stop, she was not acting suspicious and was stopped for the sole purpose of obtaining personal information. Mrs. Baggett was not informed that she was free to leave. After the syringes were found in the dumpster, Dowdy testified that Mrs. Baggett was not free to leave and would have been arrested if she had tried to leave. Deputy Woods who was also at the scene testified that Mrs. Baggett's purse was closed when Dowdy seized it. Woods further stated that nothing inside the purse was visible.
The court denied Mrs. Baggett's motion to suppress finding that the initial contact was a police-citizen encounter, which became a detention with probable cause to arrest following the finding of the needles in the dumpster. Because the trial court found that a search of the purse occurred,[*] we must determine if the events which preceded the search gave the officers probable cause to arrest Mrs. Baggett, which would permit a search of her purse incident to that arrest even before the arrest was made. A search incident to a lawful arrest can precede the arrest so long as the officer has knowledge of sufficient facts to constitute probable cause to arrest a defendant prior to the search. Dixon v. State, 343 So.2d 1345 (Fla. 2d DCA 1977).
The only knowledge available to the officers at the time of the search that could produce probable cause for arrest was the following: Metcalf, one of the backup officers at the scene, observed a dumpster containing lawn debris near where Mrs. Baggett and her husband were standing; the officer heard a noise like something being dropped into the dumpster; and the officer then observed two hypodermic syringes on top of the lawn debris. This same officer testified that the syringes were not there when he had looked in the dumpster moments earlier. The issue, therefore, becomes whether these observations by Metcalf established probable cause to arrest Mrs. Baggett for possession with intent to use drug paraphernalia.
For two reasons, this evidence was insufficient to constitute probable cause. First, there is no identification of Mrs. Baggett as the person who dropped the syringes into the dumpster. Officer Metcalf did not observe anyone, including Mrs. Baggett, actually drop the syringes into the dumpster. Mrs. Baggett and her husband were standing near each other exchanging items of property when Metcalf heard the dropping noise. It is equally possible that the husband, and not Mrs. Baggett, dropped the syringes. Because there is no evidence pointing to Mrs. Baggett as the person who dropped the syringes, it cannot be said that the officers had probable cause to arrest Mrs. Baggett and search her purse as no connection was made between her and the purported paraphernalia.
Further, in order to have probable cause to arrest Mrs. Baggett for the offense of possession with intent to use drug paraphernalia, the officers needed to determine that the syringes dropped into the dumpster were indeed drug paraphernalia. Section 893.146, Florida Statutes (1987) sets forth the factors which a trial court, a jury, or other authority (in this case the officers) shall consider in determining whether an object is drug paraphernalia. These factors are as follows:
(1) Statements by an owner or by anyone in control of the object concerning its use.
(2) The proximity of the object, in time and space, to a direct violation of this act.

*362 (3) The proximity of the object to controlled substances.
(4) The existence of any residue of controlled substances on the object.
(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this act. The innocence of an owner, or of anyone in control of the object, as to a direct violation of this act shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia.
(6) Instructions, oral or written, provided with the object concerning its use.
(7) Descriptive materials accompanying the object which explain or depict its use.
(8) Any advertising concerning its use.
(9) The manner in which the object is displayed for sale.
(10) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor of or dealer in tobacco products.
(11) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise.
(12) The existence and scope of legitimate uses for the object in the community.
(13) Expert testimony concerning its use.
§ 893.146, Fla. Stat. (1987). Here, there was no evidence whatsoever available to the officers at the time of the search of the purse which connected these syringes with narcotics or controlled substances. There is no testimony or other evidence that the syringes found in the dumpster were used or contained any substance. In fact, there was no testimony with regard to the syringes other than the fact they were found in the dumpster after the officer heard a noise. Hypodermic syringes have legitimate medical purposes so that in every instance they cannot be said to constitute drug paraphernalia as defined in section 893.145, Florida Statutes (1987). Although there was some testimony at the suppression hearing that Mrs. Baggett was a narcotics abuser, even if that were sufficient to conclude that the syringes were paraphernalia, that testimony does not establish the officer's knowledge of that fact at the time of the search.
In reviewing analogous cases involving pipes being utilized as drug paraphernalia, something more than the view of the pipe, by itself, was required in order to find that the officer had probable cause in order to arrest for possession of drug paraphernalia. See State v. Boulia, 522 So.2d 528 (Fla. 2d DCA 1988); Walker v. State, 514 So.2d 1149 (Fla. 2d DCA 1987). In State v. Riehl, 504 So.2d 798 (Fla. 2d DCA), review denied, 513 So.2d 1063 (Fla. 1987), a case involving syringes, this court held that sufficient probable cause existed to arrest the defendant for possession with intent to use drug paraphernalia. In that case the officers found syringes in a bathroom trash can, which contained uncoagulated blood and another containing a yellowish liquid which had been evaporated, immediately after defendant exited the bathroom, sweating profusely and glassy eyed. Riehl is quite distinguishable from this case, in which there was no testimony regarding contents of the syringes or the appearance of Mrs. Baggett.
We conclude, therefore, that the motion to suppress the evidence found in Mrs. Baggett's purse and her statements to police should have been granted, because the officers had no probable cause to arrest her for possession with intent to use drug paraphernalia at the time they searched her purse. The statements are suppressible as a product of that illegal search. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Reversed and remanded with directions to the trial court to enter an order suppressing the evidence and the statements.
SCHEB, A.C.J., and HALL, J., concur.
NOTES
[*] Although the facts raise an issue as to whether or not Mrs. Baggett's purse was open or closed and thus no search occurred (if the purse was open), that issue is foreclosed by the trial judge's finding that the purse was closed in his order denying the motion to suppress. That finding is supported by the competent, substantial evidence contained in the record on appeal. At least one officer at the scene testified that the purse was closed, and another officer testified that the purse was held together by a strap with a clasp which snapped closed onto one side even though it contained no zipper, and according to that officer, he could see inside the purse.